IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

ROSINA MARIE PAGE and )
JERCKARRA PAGE, )
 )
 )
Plaintiffs, )
 )
v. ) 1:12CV900
 )
SELECT PORTFOLIO SERVICING, INC., )
US NATIONAL BANK ASSOCIATION and )
JOHN AND JANE DOES 1-25, )
 )
Defendants. )

## MEMORANDUM OPINION AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

This matter is before the court on Defendants Select Portfolio Servicing Inc. and US National Bank Association's ("Defendants")[1] motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). (Docket Entry 2.) Plaintiffs Rosina Marie Page and Jerckarra Page, appearing *pro se*, filed a response to the motion. (Docket Entry 13.) For the following reasons, it is recommended that the Court grant Defendants' motion to dismiss.

## I. BACKGROUND

Plaintiff filed this action in the Superior Court of Durham County, North Carolina on July 9, 2012. (Docket Entry 4.) On August 19, 2012, Defendants removed this action to this Court pursuant to 28 U.S.C. § 1441, 1442 and 1446 based on federal question jurisdiction. (Docket Entry 1.) Plaintiff alleges claims for breach of contract, fraud and

---

[1] Plaintiffs also named "John and Jane Does 1-25" as Defendants in this matter. However, the record indicates that no service was ever made as to these "parties" and thus they should be terminated as parties.

usury, along with violations of 18 U.S.C. § 1341 (mail fraud); 18 U.S.C. §1962 (RICO); and 12 C.F.R. 226.17(c)(1) (Truth in Lending).[2]

In this action, which appears to involve a mortgage loan on a residential property in Durham County, Plaintiffs ask the court to empanel a Grand Jury to investigate Defendants for violations of federal antitrust laws and federal racketeering laws. They also seek actual damages in the amount of $220,364, "compensatory damages . . . as well as three times this amount in punitive damages." (Compl. at 4, Docket Entry 1.) Plaintiffs further seek a court order declaring the mortgage to be null and void. (*Id.*)

In the complaint, Plaintiffs allege that

> 3. On or about July 29, 2005, Sebring Capital Partners Limited partnership through its loan officer (or President) did verbally represent to the plaintiffs that it had approved two loans to them for the sum of $135,500 in lawful money of the United States . . .
>
> 4. The Sebring Capital Partners Limited Partnership knew or should have known that the verbal statement that they would lend the plaintiffs "lawful money of the United States" . . . was a false representation that was made recklessly and with deliberate and intentional disregard for the rights [of] the plaintiffs.
>
> 5. Relying on these false representations, the plaintiffs were induced into signing a [mortgage note, deed of trust, note, security agreement etc] on or about July 29, 2005 . . . .
>
> 6. After the plaintiffs had signed the [mortgage, deed of trust, note, etc.], the bank and its officers did fail to lend the plaintiffs lawful money of the United States for the full value of the loan.
>
> 7. In carrying out their commitment to lend lawful money of the United States, the bank did write a check for the sum of $135,500. The bank in writing this check did deliberately make a loan beyond its customers' deposits.

---

[2] Plaintiffs cite 12 CFR 226.17(c)(1) in their complaint with regard to their "Truth in Lending" claim. The Court notes that the Truth in Lending Act is found at 15 U.S.C. § 1601, *et. seq.*

2

8. The check (or checks) which the bank and its officers wrote were not backed by or redeemable in Federal Reserve Notes, coins, or lawful money of the United States for their full value.

\* \* \*

(Compl. at 2.)

While captioning the matter as an action against Select Portfolio Servicing and US National Bank Association, Plaintiffs' Complaint contains no factual allegations against these two parties. In fact, the only entity identified in the factual background section of the Complaint is Sebring Capital Partners, an entity that is not a party to the Complaint and is (presumably) referred to as "the bank" by Plaintiffs.

Defendants filed their motion to dismiss on August 19, 2012. (Docket Entry 2.) On September 12, 2012, Plaintiffs filed several documents purporting to be a response in opposition to the motion. These filings include a September 10, 2012 letter to Clerk of Court John S. Brubaker and other documents which were originally filed in the state court proceeding that has been removed to this court. In the September 10, 2012 letter to Mr. Brubaker, Plaintiff Rosina Page asserts that Defendants' motion to dismiss should be denied because Defendants failed to answer the Complaint and "are in default." (Docket Entry 13 at 1.) Included in this filing were documents indicating that Plaintiffs' "Notice of Default" was set to be heard in Durham County Superior Court on September 12, 2012. (*Id.* at 5.) However, in the Reply Brief filed by Defendants, they note that on September 20, 2012, Senior Resident Superior Court Judge Orlando Hudson denied all relief sought by Plaintiffs in the state court proceeding and dismissed Plaintiffs' "Notice of Default" and Affidavit of Default. (Def.'s Reply, Ex. A, Docket Entry 14-1.) Additionally, as noted, this action was filed in state court on July 19, 2012 (Docket Entry 4) and was removed to this court on

3

August 19, 2012 (Docket Entry 1). Plaintiffs filed their "Notice of Default" in state court on August 28, 2012, nine days after the Notice of Removal was served upon Plaintiffs. Plaintiffs were clearly on notice that Defendants had responded to the Complaint and that the matter had been removed to federal court; the "Notice of Default" therefore was untimely and improper.

Because Plaintiffs have not addressed the substance of Defendants' motion to dismiss, under the Local Rules of this district, the Court could treat the motion to dismiss as uncontested and grant it without further notice. *See* M.D.N.C. R 7.3(k). However, in view of Plaintiffs' *pro se* status, and under an abundance of caution, the court will address the substantive arguments presented by Defendants.

## II. STANDARD OF REVIEW

This court must liberally construe complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 401 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, *Weller v. Dep't of Social Servs.*, 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists.

Defendants also seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim. A motion to dismiss under Rule 12(b)(6) for failure to state a claim should be granted if the complaint does not allege "enough facts to state a claim to

4

relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In other words, the factual allegations must "be enough to raise a right to relief above the speculative level." *Id.* at 555. "Thus, while a plaintiff does not need to demonstrate in a complaint that the right to relief is 'probable,' the complaint must advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v. McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (quoting *Twombly*, 550 U.S. at 570). As explained by the United States Supreme Court:

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotations and citations omitted).

A Rule 12 (b)(6) motion tests the sufficiency of a complaint and "does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N.C. v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992). Accordingly, a court should "assume the truth of all facts alleged in the complaint and the existence of any fact that can be proved, consistent with the complaint's allegations." *E. Shore Mkts. Inc. v. J.D. Assocs. Ltd. P'ship*, 213 F.3d 175, 180 (4th Cir. 2000). Although the truth of the facts alleged is assumed, courts are not bound by the "legal conclusions drawn from the facts" and "need not accept as true unwarranted inferences, unreasonable conclusions, or arguments." *Id.*

## III. DISCUSSION

The court has not accepted as true the legal theories which constitute the bulk of the complaint in this matter. The court does accept as true plaintiffs' allegations of the existence of a mortgage and a promissory note. Additionally, the Court accepts the inference that Defendants are servicing the loan in question. Even when these allegations are accepted as true, Plaintiffs simply have not alleged any cognizable causes of action. In other words, Plaintiffs' use of legal terms and insertion of federal statutes in what is essentially an "unlawful money"[3] claim cannot create a cause of action that simply does not exist. To avoid dismissal based on Rule 12(b)(6) of the Federal Rules of Civil Procedure, a complaint must provide "more than labels or conclusions . . . ." *Twombly*, 550 U.S. at 557.

### 1. Breach of Contract Claim

Plaintiffs entitle Count One of their complaint as a Breach of Contract Claim. However, the sum total of their allegations is that Defendants "failed to lend the plaintiffs lawful money of the United States and instead substituted a check with the intended purpose of circulating it as money." Plaintiffs do not allege the existence of a contract between them and Defendants, nor do they allege any specific contract terms which were breached by Defendants. *See D.G. II, LLC v. Nix*, 211 N.C. App. 332, 337, 712 S.E.2d 335, 339 (2011) ("The elements of a claim for breach of contract are (1) existence of a valid contract and (2) breach of the terms of that contract.") In fact, as mentioned above, the factual allegations preceding the one-paragraph breach of contract claim refer only to Sebring Capital Partners

---

[3] *See Barber v. Countrywide Home Loans, Inc.*, No. 2:09-CV-40-GCM, 2010 WL 398915, at *4-5 (W.D.N.C. 2010) (defining "unlawful money" claims and holding that such claims are not cognizable.)

6

and do not mention Defendants at all. These allegations are not consistent with any theory of liability and obviously fall far short of the line of "plausibility of entitle[ment] to relief." *Twombly*, 550 U.S. at 557.

**2. Fraud, Racketeering and Usury**

**a. Fraud**

Plaintiffs entitle Count Two of their Complaint "Fraud and Racketeering." To the extent they are alleging common law fraud, the claim fails. The essential elements of fraud under North Carolina law are (1) a false representation or concealment of a material fact, (2) reasonably calculated to deceive, (3) made with intent to deceive, (4) which does in fact deceive, and (5) resulting in damage to the injured party. *Ragsdale v. Kennedy*, 286 N.C. 130, 138, 209 S.E.2d 494, 500 (1974). Rule 9(b) requires that "the circumstances constituting fraud . . . shall be stated with particularity," Fed. R. Civ. 9(b), which requires alleging "time, place, and contents of the fraudulent representation, the identity of the person making the representation and what was obtained as a result of the fraudulent act or representations." *Terry v. Terry*, 302 N.C. 77, 85, 273 S.E.2d 674, 678 (1981).

In the one-paragraph allegation of "Count Two," Plaintiffs refer to "mail fraud" and "wire fraud," alleging that "all these parties are in collusion in using the U.S. Mails and Wire Services to collect on this unlawful debt." To the extent Plaintiffs are attempting to bring claims for mail and/or wire fraud, these claims fail. It is well-settled that no private right of action exists of wire fraud or mail fraud. *See Napper v. Anderson, Henley, Shields, Bradford & Pritchard*, 500 F.2d 634 (5th Cir. 1974) (upholding dismissal of claim of private right of action under Wire Fraud Act for lack of subject matter jurisdiction); *see also Baker v. Data Dynamics,*

7

*Inc.*, 561 F. Supp. 1161, 1166 (W.D.N.C. 1983) (same); *Williams v. McKinney*, 6:06-cv-3465-HFF-WMC, 2008 WL 731124, *4 (D.S.C. 2008) (no private right of action for wire fraud or mail fraud); *Uhre v. Emmett A. Larkin Co., Inc.*, 205 F. Supp.2d 475, 478 (D. Md. 2002) ("Courts in this circuit have expressly held that no private right of action exists for mail fraud or for wire fraud.") (internal quotation and citation omitted). Accordingly, this Court recommends that Count Two of the Complaint be dismissed for failure to state a claim.

### b. Racketeering

In both Count Two and Count Three, Plaintiffs use the term "Racketeering." In using the term, and citing 18 U.S.C. § 1962, the court assumes that Plaintiffs are attempting to invoke the Racketeering Influenced and Corrupt Organizations Act ("RICO") under federal law. Plaintiffs' claims are deficient as a matter of law. To allege racketeering under federal law, Plaintiffs must allege (1) Defendants violated 18 U.S.C. § 1962; (2) Plaintiffs suffered injury to injury or property; and (3) Defendant's violation of the RICO statute was the proximate cause of the injury. *Brandenburg v. Seidel*, 859 F.2d 1179, 1186 (4th Cir. 1988), overruled on other grounds, *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 711 (1996). Additionally, Plaintiffs must allege a direct nexus between the RICO predicate acts and their alleged injury. *Hemi Group, LLC v. City of New York, NY*, 559 US 1, 9 (2010).

Plaintiffs here fail to allege any facts supporting their conclusory allegation that Defendants engaged in a "pattern of racketeering activity" or any nexus between a predicate act and their alleged injury. Instead, they simply allege that Defendants "are all parties to the writing and processing of a check written by Sebring Capital Partners Limited partnership on or about July 29, 2005. All these parties are in collusion . . . ." (Compl. at 3, Docket Entry

8

4.) Since Plaintiffs' conclusory allegations fail to state a claim upon which relief can be granted, the Court will recommend that this claim be dismissed.

### c. Usury

Plaintiffs also allege, in "Count Three" that Defendants "creat[ed] an unlawful debt by passing a bad check" and "collected an annual interest rate estimated to be twenty times greater than the amount of interest the plaintiffs agreed to in the note they signed." (Compl. at 3.) They allege that "[t]his violation of contract law and usury laws is due to the fact that the actual amount of unlawful money risked by the bank in making the loan was less than 5% of the loan's face value." (*Id.*)

Plaintiffs again have offered nothing but conclusory allegations and fail to identify any facts supporting a usury claim. *See Penn v. Cumberland*, 883 F.Supp. 2d 581, 591 (E.D. Va. 2012) (dismissing plaintiff's usury claims for vagueness where allegations "fail[ed] to identify charges alleged to be usurious or even precisely which usury statute was allegedly violated."). Plaintiffs have failed to state a claim for usury and it is recommended that this claim be dismissed.

### 3. Truth in Lending

Finally, in a claim labeled as "Count III,"[4] Plaintiffs allege "violations of Truth in Lending Law." (Compl. at 3.) The Truth in Lending Act ("TILA") requires creditors to make specific disclosures before extending credit to consumers. Suits claiming violations of TILA must be brought within one year of the statutory violation. 15 U.S.C. § 1640 (e); *see*

---

[4] This claim is actually the fourth claim asserted by Plaintiffs, as it follows "COUNT THREE" in the Complaint. (Compl. at 3.)

9

*also Cauley v. OakFirst Loan Center, LLC*, Civil Action No. RDB-09-772, 2010 WL 65003, at *2 (D. Md. 2010).

Here, Plaintiffs allege that they entered into the loans in 2005. This lawsuit was filed in 2012, which is over 7 years later. Thus, Plaintiffs' claims are time-barred and should be dismissed. Additionally, Plaintiffs have failed to state a claim for any violation of TILA. The vague and nonsensical allegations in the Complaint, alleging that Defendants failed to disclose the material fact that "Plaintiff was the depositor and that Defendant(s) risked none of its assets in the exchange, or any assets of other depositors" simply do not rise to the level of a plausible claim supporting Plaintiffs' right to relief under the TILA. The Court, therefore, recommends that this claim be dismissed for failure to state a claim.

## IV. CONCLUSION

For the reasons stated above, **IT IS RECOMMENDED** that the court **GRANT** Defendants' motion to dismiss under Rule 12(b)(6) for failure to state a claim. (Docket Entry 2.)

_____
Joe L. Webster
United States Magistrate Judge

August 30, 2013
Durham, North Carolina

10